IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

KATHLEEN GRAGG,

    Plaintiff,
 vs.           **Case No. 10-4020-RDR**

MICHAEL J. ASTRUE,
Commissioner of Social
Security,
    Defendant.

## MEMORANDUM AND ORDER

  On August 26, 2006, plaintiff filed applications for social security disability insurance benefits and supplemental security income benefits. These applications alleged a disability onset date of April 14, 2006. On April 13, 2009, a hearing was conducted upon plaintiff's applications. The administrative law judge (ALJ) considered the evidence and decided on September 2, 2009 that plaintiff was not qualified to receive benefits. This decision has been adopted by defendant. This case is now before the court upon plaintiff's motion to reverse and remand the decision to deny plaintiff's applications for benefits.

I. STANDARD OF REVIEW

  To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E), during the time when the claimant had "insured status" under the Social Security program. See <u>Potter v. Secretary of Health & Human Services</u>, 905 F.2d 1346, 1347 (10th Cir.

1990); 20 C.F.R. §§ 404.130, 404.131. To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

For supplemental security income claims, a claimant becomes eligible in the first month where he or she is both disabled and has an application on file. 20 C.F.R. §§ 416.202-03, 416.330, 416.335.

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1271 (D.Kan. 2004). "Substantial evidence" is "more than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id., quoting Richardson v. Perales, 402 U.S. 389, 401 (1971). The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)). The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court

would have made a different choice if the matter were referred to the court de novo.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)).

II.  THE ALJ'S DECISION (Tr. 10-19).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision.  (Tr. 11-12). First, it is determined whether the claimant is engaging in substantial gainful activity.  Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe."  At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.  Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work.  Finally, at the last step of the sequential evaluation process the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

In this case, the ALJ decided plaintiff's application should be denied on the basis of the fifth and last step of the evaluation process.  The ALJ decided that plaintiff maintained the residual

functional capacity to perform jobs that existed in significant numbers in the national economy.

The ALJ made the following specific findings in her decision. First, plaintiff meets the insured status requirements for Social Security benefits through December 31, 2010. Second, plaintiff did not engage in substantial gainful activity after April 14, 2006, the alleged onset date of disability. Third, plaintiff has the following severe impairments: coronary artery disease; degenerative disc disease of the lumbar spine; vertigo; depression; and status post lacunar infarct. Fourth, plaintiff does not have an impairment or combination of impairments that meet or medically equal the Listed Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Fifth, plaintiff has the residual functional capacity to perform:

> sedentary work . . . including the ability to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk for 2 hours in an 8 hour day, and sit for 6 hours in an 8 hour day. [Plaintiff] cannot work around hazardous environments, including unprotected heights, moving machinery, operating machinery or driving. She should avoid temperature extremes. [Plaintiff] cannot perform jobs that require good acute hearing skills, but is able to hear normal conversational tones. Regarding her depression, [plaintiff] is limited to unskilled, repetitive, routine work that involves no contact with the general public, but she can have occasional contact with co-workers of a superficial nature.

(Tr. 15). Sixth, plaintiff was unable to perform any past relevant work. But, seventh, plaintiff was capable of performing jobs that existed in significant numbers in the national economy, such as:

4

hand packager; final assembler; and document preparer. (Tr. 18). This last finding was based upon the testimony of a vocational expert, and the ALJ considered plaintiff's age, education, work experience and residual functional capacity.

III. ARGUMENTS & ANALYSIS

Plaintiff's general argument to reverse and remand defendant's decision is that the ALJ gave too much weight to Dr. Robert Barnett's conclusions from a consultative mental examination of plaintiff. Dr. Barnett, a licensed psychologist, examined plaintiff on May 29, 2009.

Plaintiff made the following impression according to Dr. Barnett:

> She came to the interview with average grooming and appeared neat and clean. She presented as a pressured individual who made a number of spontaneous verbalizations. She made appropriate eye contact. She sits with normal posture, but walks with a stagger. She does not appear physically fit. She is facially normal with the exception of missing teeth. Intellectually, she gives the impression of functioning in the average range. Her affect during the interview was mildly dysphoric. She describes her mood as, "pretty depressed, stressed." She said recently she has been tearful. With her medication she sleeps four hours a night and takes an occasional nap during the day. She describes her appetite as variable and said her only enjoyable activity was going for walks with a friend. [Plaintiff] said she used to have a temper, but not anymore. She admits to being irritable. She has attempted suicide one time in 2006, by an overdose of medication. She said she experienced suicidal ideation, "off and on," but denied any plan or intent. Her thought processes during the interview were logical and coherent. There was no evidence of any disturbance of thought content. She denied any history of auditory or visual hallucinations. She admits to difficulty trusting others and says she is

frightened of others, but also, "really cautious." [Plaintiff] complains of memory problems and says she has difficulty with forgetfulness and short-term memory. She was alert and fully oriented for the interview.

(Tr. 470). Dr. Barnett made the following assessment:

[Plaintiff] does not appear to be significantly cognitively limited in a manner that would interfere with some types of employment. She showed no difficulty with attention during the interview, but has mild problems with concentration. She appears cognitively capable of simple, repetitive work tasks, but in my clinical opinion, her vertigo would interfere with her ability to cognitively complete complex tasks. She identifies depression and vertigo as the most significant barriers to employment. She relates a positive history of work relationships and was appropriate with me during the interview, given her mild affective and verbal pressure.

At the end of the interview I asked [plaintiff] to discuss her diagnosis of posttraumatic stress disorder. She responded, "I don't get that - it's just what they always said." She went on to say, "They say it's due to the abusive relationship." When asked if she experienced flashbacks she responded, "I get agitated and reactive - I just think about it." In my clinical opinion, she does not present with nor does she describe the typical symptoms associated with this disorder.

(Tr. 471).

PTSD

Plaintiff's first argument is that the ALJ erred by giving "great weight" to Dr. Barnett's rejection of a PTSD diagnosis. Dr. Barnett did not list PTSD as a diagnosis. His diagnostic impressions included: depressive disorder, not otherwise specified, moderate; and cognitive disorder, not otherwise specified (mild secondary to vertigo). (Tr. 471). The ALJ commented that she gave Dr. Barnett's conclusion regarding PTSD

"great weight as there is no evidence of flashbacks or recurring nightmares of past experiences." (Tr. 17).

Plaintiff contends that this misrepresents the record because a licensed medical social worker, Jennie Jackson-Colburn, recorded during an intake interview in June 2006 that plaintiff had symptoms of: "nightmares, intrusive thoughts, flashbacks, physiological and psychological reactions to internal and external cues/reminders of abuse, avoidance of thoughts/feelings and activities/places that remind her of abuse, feelings of detachment from others, sleep difficulties (sleeps only 4 hours/night, wakes frequently feeling "panicky"), constant irritability." (Tr. 288). Jackson-Colburn listed a principal diagnosis of mood disorder, not otherwise specified. She also listed PTSD as a diagnosis as well as "parent-child relational problem." (Tr. 289). Plaintiff further notes that the record contains multiple entries showing that plaintiff had other symptoms of PTSD such as outbursts of anger and sleep difficulties.

Plaintiff has received treatment for her mental impairments at the Bert Nash Community Mental Health Center (Tr. 432-468, 279-80) and from Christian Psychological Services (Tr. 312-14). The majority of the treatment sessions and records of such sessions are from the Bert Nash Community Mental Health Center. The court has carefully reviewed those records which cover at least 24 sessions from October 20, 2006 to February 24, 2009. The primary diagnosis

7

in these records is either borderline personality disorder or mood disorder. There are also multiple references to a diagnostic impression of depression or anxiety. The discussion of symptoms in these records seems more consistent with these disorders than with PTSD, although some of the symptoms may be the same or similar. There are some references to PTSD, or in one instance "PTSD?" (Tr. 453). But, after reviewing the entire record of symptoms and diagnoses, the court believes there are substantial reasons behind the ALJ's decision to give "great weight" to the rejection of the PTSD diagnosis.

In conclusion, while the ALJ may have somewhat overstated the matter by stating there is "no evidence of flashbacks," the court finds that there is substantial support in the record for giving weight to Dr. Barnett's rejection of a PTSD diagnosis.

Support for Dr. Barnett's opinion

Plaintiff contends that Dr. Barnett's opinion has inadequate support and that the ALJ's reliance upon Dr. Barnett's opinion is inconsistent with Social Security regulations.

Social Security regulations provide that medical opinions will be considered together with the rest of the relevant evidence in the record. 20 C.F.R. § 404.1527(b). Opinion evidence and other evidence will be examined for consistencies and inconsistencies. § 404.1527(c)(1)&(2). Medical opinions are weighed with the preference extended to opinions based upon an examination and

treating relationship. § 404.1527(d)(1)&(2). In addition to considering the nature and extent of the treatment relationship, the relevant evidence in support of an opinion, the consistency with the record as a whole, and the specialization of the opinion giver will be taken into account. § 404.1527(d)(2)-(6).

As discussed at page 17 of the record, the ALJ's opinion indicates that Dr. Barnett's assessment of plaintiff's mental impairment to her functional capacity was consistent with notations in the record that her treatment and medications were effective. The ALJ's decision further suggests that Dr. Barnett's assessment was consistent with plaintiff's daily activities. The ALJ also noted that Dr. Barnett's opinion was consistent with the opinion of the State agency psychologist and with plaintiff's demeanor during the administrative hearing. All of these points convince the court that the ALJ followed Social Security regulations in evaluating Dr. Barnett's opinion.

Plaintiff asserts that the ALJ ignored evidence which contradicted Dr. Barnett's opinion such as: a notation in 2006 that plaintiff was a "candidate for inpatient treatment" (Tr. 314), and a record from February 2009 that plaintiff was "dramatic as usual" and giving a diagnosis of borderline personality disorder. (Tr. 432). The court rejects these criticisms because the bulk of the mental health records indicate that plaintiff retains a mental functional capacity in accord with the limitations mentioned by Dr.

9

Barnett and the state agency psychologist. These records show that plaintiff suffers from impairments which cause anxiety, frustration, agitation and anger. But, the records also show effective treatment and medication in that plaintiff is frequently noted to be "pleasant" and "calm." The ALJ is not obliged to discuss every piece of evidence in his decision. <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009 (10th Cir. 1996). In this instance, the court does not believe the items mentioned by plaintiff are so probative as to require discussion.

Plaintiff further claims that the ALJ did not indicate how Dr. Barnett's opinion was consistent with plaintiff's daily activities. The court disagrees. We believe this is found where the ALJ discusses plaintiff's self-care, household tasks and care of a grandchild. (Tr. 17). It should also be noted that Dr. Barnett and the ALJ acknowledged plaintiff's difficulties with vertigo and other disabilities, and they accounted for these difficulties in their assessments of plaintiff's ability to work.

Finally, plaintiff suggests that the ALJ should have discounted Dr. Barnett's opinion because he only examined plaintiff once and because it is unclear which medical records Dr. Barnett considered before making his assessment. We reject these arguments because they are not supported in the record. The record does not show that the ALJ failed to consider that Dr. Barnett only examined plaintiff once. Nor does it show that Dr. Barnett failed to

thoroughly consider plaintiff's medical history.  It should be noted, in addition, that the record does not contain a contrary medical opinion from someone with a longer treating or examining history or someone who may have been more familiar with plaintiff's medical record.

### Residual functional capacity

Plaintiff's last argument is that the flaws she alleges in Dr. Barnett's report undermine the ALJ's conclusions as to plaintiff's residual functional capacity.  As we have rejected plaintiff's allegations, we conclude that the ALJ's findings in this case are supported by substantial evidence.

IV. CONCLUSION

For the above-stated reasons, the court is convinced that the decision to deny benefits followed the proper legal standards and is supported by substantial evidence.  Therefore, the court affirms defendant's decision to deny plaintiff's applications for disability benefits and supplemental security income benefits.

**IT IS SO ORDERED.**

Dated this 8th day of December, 2010 at Topeka, Kansas.

> s/Richard D. Rogers
> United States District Judge